IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal Action No. 3:18-cr-628-JMC-2[1] |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| Jennifer Logan, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

    Defendant Jennifer Logan ("Logan") is a prisoner currently serving a sentence of one-hundred eighty (180) months in the Federal Bureau of Prisons ("BOP"). (ECF No. 520.)

    This matter is before the court on Logan's *pro se* Motion(s) for Compassionate Release (ECF Nos. 718 and 731) under 18 U.S.C. § 3582.[2] Specifically, Logan requests the court to do the following: (1) assign Logan an attorney,[3] (2) schedule a Rule 35 hearing in compliance with the Federal Rules of Criminal Procedure,[4] and (3) grant her compassionate release due to her medical conditions alleging that she is susceptible to COVID-19. (ECF No. 731.) For the reasons stated below, the court **DENIES** Logan's Motion(s) for Compassionate Release (ECF Nos. 718 and 731) without prejudice.

            **I.**      **FACTUAL AND PROCEDURAL BACKGROUND**

    On June 20, 2018, the Grand Jury named Logan along with the other Defendants in an Indictment containing thirty (30) counts, but only named Logan in the following seven (7) counts:

    (1) That beginning at a time unknown to the Grand Jury, but beginning at least in or around September 2014, and continuing thereafter, up to and including the date of this

---

[1] This matter is also referred to as civil Action No. 3:19-cv-03173-JMC.
[2] Motions under this section are called Motions for Compassionate Release. *See United States v. Pack*, No. 2:17-cr-20002-10, 2020 WL 2174447, at *1 (W.D. Tenn. May 5, 2020).
[3] The court finds that the issues before the court do not warrant appointment of counsel.
[4] A Rule 35 Motion must be made by the government. *See* Fed. R. Crim. P. Rule 35.

    Indictment, in the District of South Carolina . . . JENNIFER LOGAN [and others,][5] knowingly and intentionally did combine, conspire, and agree and have a tacit understanding with each other and with others, both known and unknown to the Grand Jury . . . to knowingly, intentionally, and unlawfully possess with intent to distribute 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, both Schedule II controlled substances;

        a. With respect to . . . JENNIFER LOGAN . . . the amount involved in the conspiracy attributable to each of them [the other Defendants] as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, is 50 grams or more of methamphetamine and 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)

. . .

(15) That on or about August 21, 2017, in the District of South Carolina, the Defendant, JENNIFER LOGAN, did knowingly intentionally, and unlawfully possess with intent to distribute and did distribute 5 grams or more of methamphetamine, a Schedule II controlled substance; In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)

. . .

(16) That on or about August 21, 2017, in the District of South Carolina, the Defendant, JENNIFER LOGAN, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and effecting commerce, a firearm, that is a Smith & Wesson, model M&P, .45 caliber pistol and .45 caliber ammunition, all of which had been shipped and transported in interstate and foreign commerce; In violation of title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e)

. . .

(17) That on or about August 21, 2017, in the District of South Carolina, the Defendant, JENNIFER LOGAN, knowingly did use and carry a firearm during and in relation to, and did possess a firearm in furtherance of, a drug trafficking crime which is prosecutable in a court of the United States; In violation of Title 18, United States Code, Section 924(c)(1)(A)(i)

. . .

(26) That on or about December 15, 2017, in the District of South Carolina, the Defendant, JENNIFER LOGAN, did knowingly, intentionally, and unlawfully possess with intent to distribute a quantity of amphetamine and a quantity of methamphetamine, both Schedule II controlled substances; In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C)

---

[5] The Indictment included eleven (11) other Defendants.

. . .

(27) That on or about December 15, 2017, in the District of South Carolina, the Defendant, JENNIFER LOGAN, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, .380 caliber ammunition, which had been shipped and transported in interstate and foreign commerce; In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e)

. . .

(29) That on or about February 8, 2018, in the District of South Carolina, the Defendant, JENNIFER LOGAN, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce, firearms, which are a Mossberg, model 500AT, 12 gauge shotgun and a Smith & Wesson, model Bodyguard, .380 caliber pistol, and 12 gauge, .380 caliber, and 9mm ammunition, all of which had been shipped and transported in interstate and foreign commerce; In violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).

(ECF No. 3.)

On July 2, 2018, Logan pleaded not guilty to these charges. (ECF No. 144.) On October 23, 2018, a Plea Agreement was made between the United States and Logan, whereby:

[t]he Defendant agree[d] to plead guilty to Counts 1 and 17 of the Indictment [then] pending, which charge[d] 'conspiracy to possess with intent to distribute,' a violation of Title 21, United States Code, §§ 846, 841(a)(1) and 841(b)(1)(A), and 'possession of a firearm in furtherance of drug trafficking,' a violation of Title 18, United States Code, § 924(c).

(ECF No. 315.)

On October 29, 2018, the court accepted Logan's Guilty Plea and sentenced her to one hundred eighty (180) months imprisonment on May 20, 2019. (ECF Nos. 321 and 520.) On March 11, 2020, during Logan's imprisonment, the World Health Organization characterized COVID-19, also known as the new coronavirus, as a pandemic. On March 13, 2020, the President of the United States officially declared a national emergency due to the virus.

In her Motion(s) filed on April 9 and July 10, 2020, Logan urges the court to grant her compassionate release but does not specify whether she is requesting a modification or reduction in her sentence. (ECF No. 731.) Logan argues that the court should grant that compassionate

release because she is "legally disabled" with a multitude of medical issues including an ileostomy bag, "gastroparesis," and "severe asthma." (ECF No. 731 at 2.) Logan contends that she will face serious and potentially fatal health problems if she were to remain incarcerated for the reminder of her sentence due to the high risk of COVID-19. The Government objected to this Motion, alleging that "Logan has not met her burden of establishing that a sentence reduction is warranted under the statute." (ECF No. 748.)

## II.     LEGAL STANDARD

The district court may modify a term of imprisonment upon motion by the defendant after he has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on his behalf, or thirty (30) days has elapsed from receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009). If the defendant has met the exhaustion requirement, the court may

> reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unnerved portion of the original term of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The exhaustion requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *See United States v. Poulios*, No. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020); *see also United States v. Crawford*, No. 2:03-cr-10084, 2020 WL 2537507, at *1 (W.D. Va. May 19, 2020). As the movant, the defendant bears the burden to establish that he or she is

4

eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

### III.    ANALYSIS

Upon review of the applicable law and facts presented here, the court finds that Logan is not entitled to relief. The court discusses these reasons below.

1. *Exhaustion of Administrative Remedies*

The BOP requires proper exhaustion of its administrative remedies and the process is as follows: (1) file the request with the BOP; (2) receive approval or denial from the warden of the facility; (3) if the request is denied, submit an appeal to the BOP; then (4) file a motion for release with the court.[6] Based on the evidence presented to the court, it is clear that Logan has, at least, initiated the process for administrative remedies but the court cannot make any determination as to whether the Warden has denied or approved the request or whether Logan has appealed. The Government contends that the Warden denied the request because "Logan did not meet the criteria for extraordinary and compelling circumstances which would warrant compassionate release." (ECF No. 748 at 8.)

On February 13, 2020, Logan filed a Request for Administrative Remedy (ECF No. 731-1 at 7) with the BOP; however, the court is unsure of the results of the request because Logan did not present the results to the court. Instead, Logan has submitted several emails from Logan to staff and the Warden dated March 30, 2020, to April 27, 2020, following up on her compassionate release request, but has not provided any pertinent email responses from the staff. (ECF No. 731 at 7–12.) The only email response provided was from the Warden stating that Logan's medical

---

[6] *See Administrative Remedy Program*, https://www.bop.gov/policy/progstat/1330_018.pdf (last visited August 5, 2020).

"concerns are noted." (ECF No. 731-1 at 12.) If Logan's request was denied by the Warden, then Logan has not met her burden of establishing that she has appealed the denial of her request to the BOP. Therefore, the court lacks authority to grant a sentence reduction under that provision. *See United States v. Johnson*, No. 14-cr-0441, 2020 WL 1663360, at *6 (D. Md. Apr. 3, 2020) (noting that "[u]ntil [the administrative exhaustion] requirements are satisfied, the Court lacks jurisdiction to entertain [a 3582(c)(1)(A) motion"). Logan has failed to meet her burden by not providing the court with sufficient information that she has fully satisfied the exhaustion requirement.[7] *See* § 3582(c)(1)(A)(i).

2. *Compassionate Release*

As amended by the First Step Act, a court may modify a term of imprisonment on the motion of the petitioner, after considering the factors, if there are "extraordinary and compelling reasons" that warrant such a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). A defendant must bear the burden of proof before a court can grant a compassionate release motion. *United States v. Beck*, 425 F. Supp. 3d 573, 578 (M.D.N.C. 2019). Courts have construed the COVID-19 pandemic and the severe illnesses that would leave a person at a higher risk of being infected with COVID-19 as "extraordinary and compelling" reasons. *E.g., United States v. Salvagno*, No. 5:02-cr-51, 2020 WL 3410601 (S.D.N.Y. Apr. 23, 2020).

In the present case, Logan asserts that she is susceptible to COVID-19 due to her medical conditions, paired with the contention that there is "no doctor at [the] prison" and the prison "only ha[s] a LPN," which arguably provides the extraordinary and compelling reasons that warrant her

---

[7] Although courts have been given authority to waive the exhaustion requirements at their discretion due to COVID-19, the court can still deny the defendant's request for release. *See Poulios*, No. 2:09-cr-109, 2020 WL 1922775, at *1. However, even if the court decided to waive the exhaustion requirements, the court is not inclined to grant Logan's request.

compassionate release. (ECF No. 731 at 2.) Logan asserts that she is "legally disabled" because she has an "ileostomy . . . no colon . . . gastroparesis . . . [and] severe asthma." (ECF No. 731 at 2.) According to CDC guidance,[8] the only medical condition Logan has that would leave her more susceptible to contracting COVID-19 is her asthma. Logan has failed to provide medical records for the court to determine the severity of her alleged medical conditions. Thus, the court finds that Logan fails to present "extraordinary and compelling" reasons for her release despite listing multiple medical conditions.

Additionally, the Government, in its Response to Logan's Motion, provided some medical records indicating that Logan's asthma, while "not well controlled" . . . "was getting better after a recent flare up/bout of bronchitis." (ECF No. 748 at 7.) The BOP has reported that out of eight-hundred sixty-four (864) total inmates[9], only seventeen (17) inmates and eleven (11) staff have tested positive for COVID-19 at FCI Tallahassee where Logan is currently housed.[10] No inmates or staff have died from COVID-19.[11] The BOP has implemented a Modified Operations Plan in order to combat the spread of COVID-19 within the BOP. This Modified Operations Plan includes restricting legal visits, visitation, tours, volunteers, and cancelling all official staff travel as well as screening all staff and inmates. Moreover, modifications have been made to maximize social distancing and "inmates are limited in their movements to prevent congregate gathering" and any

---

[8] Centers for Disease Control and Prevention, *Groups at Higher Risk for Severe Illness,* updated July 17, 2020 at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited August 10, 2020).
[9] Federal Bureau of Prisons, *FCI Tallahassee* at https://www.bop.gov/locations/institutions/tal/ (lasted visited August 12, 2020).
[10] Federal Bureau of Prisons, *COVID-19 Coronavirus*, updated August 9, 2020 at https://www.bop.gov/coronavirus/ (last visited August 10, 2020).
[11] Federal Bureau of Prisons, *COVID-19 Coronavirus*, updated August 9, 2020 at https://www.bop.gov/coronavirus/ (last visited August 10, 2020).

inmate movement involves small numbers and is authorized only for "commissary, laundry, showers, and telephone."[12] Therefore, while the court is sympathetic to Logan's health conditions, the court finds that Logan has failed to meet her burden of presenting "extraordinary and compelling" reasons for her release.

## IV.     CONCLUSION

Based on the above, the court **DENIES** the Motion(s) for Compassionate Release (ECF Nos. 718 and 731) without prejudice. Additionally, the court **DENIES** Logan's request for counsel and a Rule 35 Motion.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

August 12, 2020
Columbia, South Carolina

---

[12] Federal Bureau of Prisons, *BOP Implementing Modified Operations*, at https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 12, 2020).